IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH CAULEY, M.D., Ph.D. Plaintiff | : : : | |
| v. | : : | NO. |
| GEISINGER HEALTH 100 North Academy Avenue Danville, PA 17822 Defendant | : : : : | JURY TRIAL DEMANDED Electronically Filed |

## COMPLAINT

AND NOW, comes Keith Cauley, M.D., Ph.D., by and through his counsel, Tucker Arensberg, P.C., and hereby files the within Complaint and in support thereof avers as follows:

**I.   PARTIES**

1. Plaintiff Keith Cauley, M.D., Ph.D. ("Dr. Cauley") is a resident of Connecticut residing at 33 Fairview Drive, Farmington CT 06032. At all times relevant to the Complaint, Dr. Cauley was licensed to practice medicine in the Commonwealth of Pennsylvania. Dr. Cauley originally graduated from the University of Vermont College of Medicine where he obtained his M.D. in June of 2002.

TADMS:5431881-1 035502-190648

2. Dr. Cauley subsequently completed an internship in internal medicine with Bassett Health Care in Cooperstown, New York in June of 2003 and conducted his residency in diagnostic radiology at the University of Connecticut Health Science Center and Mount Auburn Hospital in Cambridge, Massachusetts from June 2003 through June 2007.

3. Dr. Cauley subsequently completed an ACGME accredited fellowship in neuroradiology at the University of Vermont College of Medicine/Fletcher Allen Health Care from approximately June 2007 through June 2009.

4. Defendant Geisinger Health is a Pennsylvania nonprofit nonstock corporation with an address and principal place of business of 100 North Academy, Danville, Pennsylvania  17822.

5. Geisinger Health owns and operates Geisinger Medical Center also located in Danville, Pennsylvania.

6. From January 4, 2016 through September 30, 2019, Dr. Cauley was an associate in the neuroradiology division of the radiology department at Geisinger Medical Center.

7. Dr. Cauley was Board certified in radiology with a certificate of advanced qualification in neuroradiology.

8.  Dr. Cauley has no medical malpractice history and no history of restriction of his clinical duties.

## II.   JURISDICTION AND VENUE

9. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 since the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between parties which are citizens of different states.

10.   Venue in this Court is proper pursuant to 28 U.S.C. §1391 since parts of the events giving rise to the within claim occurred in this judicial district, and Defendant maintains facilities and regularly transacts business within this judicial district.

## III.   FACTS RELATING TO ALL CLAIMS

11.   In or about early August of 2019, Dr. Cauley's contract was renewed by Geisinger Health for fiscal year beginning July 1, 2019.  A true and correct copy of the letter renewing Dr. Cauley's contract for fiscal year beginning July 1, 2019 is attached hereto as **Exhibit "A"**.

12.   On or about August 21, 2019, Dr. Cauley was abruptly and without warning placed on administrative leave from clinical duties.

13. Dr. Cauley had previously undergone annual evaluations as a radiologist at Geisinger Health and had no reason to believe that any performance as a radiologist was substandard.

14. Without prior notice, the Chairman of the radiology department, Alpen Patel, M.D., paged Dr. Cauley out of his clinical duties to report immediately to the Chairman's office on August 21, 2019.

15. When Dr. Cauley entered the Chairman's office, there were a number of individuals present including a representative from Human Resources, Dr. Patel, the vice chair for radiology staffing, Dr. Scott Collins, and the division chief of neuroradiology, Dr. Gino Mongelluzzo.

16. At that time, Dr. Cauley was told he was being placed on administrative leave as the result of an internal peer review that had been conducted without his knowledge.

17. Dr. Cauley was informed that the peer review evidenced poor performance on his behalf, but was not presented with any paperwork or details.

18. Dr. Cauley was also not informed why or how the review was conducted or by whom it was conducted.

19. Upon inquiring into specifics as to the nature of the review and its findings, Dr. Cauley was informed that the review had evidenced an unacceptable rate of "Type II errors."

20. Dr. Cauley was informed that there were 40% of Type II errors.

21. Dr. Cauley was also informed at that time that Type II errors represent errors that do not change clinical management.

22. Dr. Patel then informed Dr. Cauley that Geisinger Health would send a set of Dr. Cauley's diagnostic reports for an external review out of concern for "reviewer bias."

23. Dr. Cauley was informed that he would be placed on administrative leave until the outcome of the external review.

24. The HR representative present at the meeting informed Dr. Cauley that he had the option to resign his employment in which case he would not appear on the NPDB (National Provider Data Bank). However, if the external review was in agreement with the internal review, Dr. Cauley could be subject to an adverse peer review action and would be reported to the NPDB.

25. During the administrative leave, Dr. Cauley was not provided access to clinical records and, upon information and belief, his log-in privileges were suspended.

26. The tone of the meeting was hostile and inexplicable given Dr. Cauley's prior record as referenced above.

27. Subsequent to the meeting, Dr. Cauley discussed the meeting with Dr. Mongelluzzo.

28. Dr. Mongelluzzo informed Dr. Cauley that Dr. Mongelluzzo was not privy to the motivation for the meeting and was never provided access to the peer reviews even though he was Dr. Cauley's immediate supervisor.

29. Upon information and belief, Dr. Mongelluzzo was also not involved in the case selection for the external review.

30. Upon information and belief, Geisinger Health had in place policies and procedures by which a proper peer review could have been conducted.

31. Instead of following said procedures, Geisinger Health conducted a "sham peer review" as a pretext to force a termination of Dr. Cauley's employment and to coerce him to resign.

## COUNT I

## BREACH OF CONTRACT - CONSTRUCTIVE TERMINATION

32. The foregoing paragraphs are incorporated by reference as if set forth at length.

33. While on administrative review, Dr. Cauley engaged the services of Jason Weinstock, an attorney from Harrisburg, Pennsylvania.

34. In connection with Mr. Weinstock's representation of Dr. Cauley, a meeting was held on September 13, 2019 at which time Geisinger Health and Dr. Cauley came to an agreement whereby Dr. Cauley would be forced to resign within 48 hours.

35. This agreement was memorialized by email dated September 13, 2019 between Jason Weinstock and Donald Zakowski, counsel on behalf of Geisinger Health.

36. A true and correct copy of the September 13, 2019 email is attached hereto as **Exhibit "B"**.

37. As stated above, prior to being placed on administrative leave by Geisinger Health, Dr. Cauley had no history of malpractice or restriction of his clinical duties.

38. As explained further herein, Dr. Cauley resigned with an understanding that Geisinger Health would carry out certain actions including, but not limited to, only providing a neutral reference with dates of employment included and permitting Dr. Cauley to meet with Dr. Mongelluzzo to review the internal and external peer reviews. On these bases alone, Dr. Cauley agreed to resign or in lieu of an improper termination.

39. As was clear from the meeting of August 13, 2019, the ultimatum provided to Dr. Cauley made evident that Dr. Cauley could not return to his current place of employment under the pending circumstances.

40. As more fully explained below, Geisinger Health has failed to adhere to its obligations under the agreement of September 13, 2019 with Dr. Cauley in that they have repeatedly refused to provide the internal and external peer reviews which forced Dr. Cauley to resign.

41. Such actions by Geisinger Health amount to a constructive termination and breach of the agreement between Dr. Cauley and Geisinger Health which was reaffirmed effective July 1, 2019. At the time of his employment and during the pendency of the agreement effective July

1, 2019, Dr. Cauley was to be paid an annual base salary of $535,427.00. See Exhibit "A".

42. Due to the breach of the agreement between Geisinger Health and Dr. Cauley, by and through the constructive termination of Dr. Cauley's employment by Geisinger Health, Dr. Cauley has suffered significant damages including the loss of his annual base compensation and the inability to find equivalent employment.

WHEREFORE, Plaintiff, Dr. Cauley, hereby demands judgment in his favor in an amount in excess of $75,000.00, together with such other relief as this Court may deem just and proper.

## COUNT II

## MISREPRESENTATION

43. The foregoing paragraphs are incorporated by reference as if set forth at length.

44. At the time that Dr. Cauley entered into an agreement with Geisinger Health, he was remained under a contract that had been renewed effective July 1, 2019.

45. On or about September 13, 2019, Dr. Cauley wrote a letter to Dr. Mongelluzzo consistent with the agreement with Geisinger Health offering Dr. Cauley's resignation effective September 30, 2019.

46. Such resignation was provided based upon the representations by Geisinger Health, by and through Donald Zakowski and others, that Geisinger Health would perform the following:

    a. Permit Dr. Cauley to meet to review the peer reviews with Gino Mogelluzzo;

    b. Only provide neutral references regarding Dr. Cauley's employment including only dates of employment;

    c. Refrain from conducting any activity that could result in a report to the NPDB;

    d. Refrain from including in Dr. Cauley's personnel file anything regarding the peer reviews or negative references.

47. Upon information and belief, Geisinger Health did not intend to follow through with the representations made to Dr. Cauley by and through counsel on September 13, 2019.

48. In particular, upon information and belief, Geisinger Health did not intend to provide Dr. Cauley with an opportunity to review the peer reviews.

49. In addition, Geisinger Health, upon information and belief, did not intend to provide a neutral reference to future prospective employers of Dr. Cauley.

50. But for the misrepresentations by Geisinger Health that induced Dr. Cauley to resign as referenced above, Dr. Cauley would not have resigned his position or issued the letter of September 13, 2019.

51. But for the misrepresentations by Geisinger Health referenced above, Dr. Cauley would still be employed by Geisinger Health today earning a salary of at least $535,427.00 per year.  See Exhibit "A".

52. Therefore, due to the misrepresentations by Geisinger Health, Dr. Cauley has been significantly harmed and suffered damages in an amount not less than his annual salary.

53. The conduct of representatives of Geisinger Health was intentional or grossly negligent with regard to the veracity of the statements made to representatives of Dr. Cauley that induced him to resign.  Such

conduct is sufficiently outrageous and with reckless disregard such that punitive damages should be awarded against Geisinger Health.

WHEREFORE, Dr. Cauley hereby demands judgment in his favor and against Geisinger Health in an amount in excess of $75,000.00, together with such other relief as this Court may deem just and proper.

### COUNT III

### DEFAMATION

54. The foregoing paragraphs are incorporated by reference as if set forth at length.

55. Subsequent to Dr. Cauley's resignation, Geisinger Health issued communication to staff members and prior colleagues of Dr. Cauley who remained employed with Geisinger Health, informing those individuals that no letters of reference could be issued on behalf of Dr. Cauley to future prospective employers.

56. Upon information and belief, such actions were taken by Geisinger Health to portray Dr. Cauley's performance record as inadequate and to interfere with Dr. Cauley's career as a neuroradiologist.

57. In addition, upon information and belief, the issuance of these emails by Geisinger Health was meant to put pressure and threaten any

current Geisinger employees who may be interested in assisting Dr. Cauley.

58.     In or about June - July, 2020, Dr. Cauley applied for a per diem position at Tufts Medical Center in Boston, Massachusetts.

59.     Dr. Cauley's application was accepted by Tufts and he was provided with a one year contract.

60.     The contract was approved by the interim president of Tufts private radiology practice, Pratt Radiology Associates, Dr. Neil Halin, and by the president and CEO of Tufts Medical Center, Dr. Craig Best.

61.     The contract included an estimated start date of September 1, 2020.

62.     Credentialing had been initiated on July 30, 2020, but had still not been finalized at that time.

63.     The requirements for credentialing at Tufts included a requirement for a reference from a clinical supervisor within the last two years of clinical practice.  Dr. William Millar had been the division chief of neuroradiology at Geisinger, and had been Dr. Cauley's principal supervisor for the majority of the two years prior to his departure from Geisinger.

64. Dr. Cauley provided the contact information for Dr. William Millar who had left Geisinger Health within the prior year and who, upon information and belief, is now presently employed at Northwell Health in Long Island, New York.

65. When the Tufts credentialing specialist attempted to contact Dr. Millar five times by email and telephone, the Tufts credentialing specialist received no response.

66. Dr. Cauley independently attempted to contact Dr. Millar to which Dr. Cauley also received no response.

67. Dr. Cauley then put forward the name of Dr. Christopher Filippi with whom Dr. Cauley had previously worked.

68. At that time, Dr. Filippi had recently accepted a chairmanship at Tufts.

69. Dr. Filippi had previously been Dr. Cauley's clinical supervisor at Columbia Presbyterian in New York, New York.

70. Dr. Cauley was then informed by the Tufts credentialing representative that Dr. Filippi had agreed to serve as Dr. Cauley's clinical reference.

71. One week later, Dr. Cauley's appointment to finish the credentialing process was canceled without explanation.

72. Dr. Cauley then received an email from Dr. Filippi requesting that they have a telephone conversation regarding the employment at Tufts.

73. At that time, Dr. Filippi informed Dr. Cauley that he was aware that a memo had circulated at Geisinger Health indicating that anyone who provided a professional reference for Dr. Cauley would be in legal jeopardy.

74. Dr. Filippi informed Dr. Cauley that he was aware that Dr. Cauley had resigned under threat of termination at Geisinger Health.

75. On September 13, 2019, Geisinger Health and representatives of Dr. Cauley entered into an agreement whereby Geisinger Health agreed to provide neutral references with dates of employment only to prospective employers of Dr. Cauley.

76. Upon information and belief, Geisinger Health has informed prospective employers of Dr. Cauley that Dr. Cauley resigned under threat of termination.

77. In addition, upon information and belief, representatives of Geisinger Health have informed prospective employers of Dr. Cauley of

information relating to an internal investigation by Geisinger Health that improperly calls into question Dr. Cauley's abilities as a radiologist.

78. In particular, upon information and belief, Geisinger Health informed representatives of Tufts that Dr. Cauley resigned under threat of termination.

79. In addition, upon information and belief, Geisinger Health informed representatives of Tufts of certain information relating to an improper internal investigation conducted by Geisinger Health that called into question Dr. Cauley's ability to perform his duties as a radiologist.

80. Such conduct by Geisinger Health is defamatory per se in that it calls into question Dr. Cauley's abilities to carry out his profession.

81. Dr. Cauley has been significantly harmed in that he has not been able to find additional employment as a radiologist due to the conduct of Geisinger Health.

82. In particular, Dr. Cauley has been prohibited from entering into a contract with Tufts, a copy of which is attached hereto, in which instance, Dr. Cauley would have been paid approximately $450,000.00 as an annual salary.

WHEREFORE, Dr. Cauley hereby demands judgment in his favor against Geisinger Health in an amount in excess of $75,000.00, together with such other relief as this Court may deem just and proper.

                Respectfully submitted,

                **TUCKER ARENSBERG, P.C.**

                /s/ Kevin L. Hall
                Michael A. Cassidy, PA I.D. #26351
                Kevin L. Hall, PA I.D. #311826
                Brian J. Murren, PA I.D. #324567
                2 Lemoyne Drive, Suite 200
                Lemoyne, PA  17043
                Phone: (717) 234-4121
                Fax: (717) 232-6802
                mcassidy@tuckerlaw.com
                khall@tuckerlaw.com
                bmurren@tuckerlaw.com
                *Attorneys for Plaintiff*

Dated:  January 8, 2021