## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CAULEY, M.D., Ph.D,

        Plaintiff,

        v.

GEISINGER CLINIC,

        Defendant.

No. 4:21-CV-00045

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 27, 2022

After an acrimonious end to his employment at the medical group Geisinger Clinic, Dr. Keith Cauley found himself unable to land a job. He quickly identified the culprit responsible for his misfortune. It seems that Geisinger was telling his prospective employers that he couldn't be trusted to do his job—at least, not well. Dr. Cauley found this particularly galling because he agreed to resign from Geisinger only after the medical group promised it wouldn't speak ill of him to others. Accordingly, Dr. Cauley filed suit, bringing claims for breach of contract, promissory estoppel, intentional misrepresentation, and defamation. Geisinger now moves to dismiss all but the breach of contract claim. For the reasons provided below, Geisinger's motion is granted in part, denied in part.

## I.   BACKGROUND

On August 21, 2019, Geisinger placed Dr. Cauley, an associate in the neuroradiology division of Geisinger's radiology department, on administrative leave due to an internal peer review that revealed poor performance on Dr. Cauley's behalf.[1] Geisinger informed Dr. Cauley that it would send a set of his diagnostic reports to a third party for an external review, and that he would remain on administrative leave pending the outcome of the external review.[2] Geisinger explained that if the third party reviewer agreed with Geisinger's judgment of Dr. Cauley's performance, he could be subject to an adverse peer review action and would be reported to the National Provider Data Bank ("NPDB").[3] Alternatively, if Dr. Cauley resigned, he would not appear on the NPDB.[4]

Dr. Cauley engaged counsel and together they met with Geisinger on September 13, 2019.[5] During this meeting, Dr. Cauley and Geisinger reached an agreement whereby Dr. Cauley agreed to resign within 48 hours and, in exchange, Geisinger committed to do the following:

(1) "Permit Dr. Cauley to meet to review the peer reviews";

(2) "Only provide neutral references regarding Dr. Cauley's employment including only dates of employment;

---

[1]   Doc. 21 ¶¶ 8, 16–19.
[2]   *Id*. ¶¶ 24–25.
[3]   *Id*. ¶ 27.
[4]   *Id*. ¶ 26.
[5]   *Id*. ¶¶ 35–36.

(3) "Refrain from conducting any activity that could result in a report to the NPDB"; and

(4) "Refrain from including in Dr. Cauley's personnel file anything regarding the peer reviews or negative references."[6]

The terms of the agreement were memorialized in an email Dr. Cauley's attorney sent Geisinger's counsel later that day.[7]

In the summer of 2020, Dr. Cauley applied for a per diem position at Tufts Medical Center in Boston, Massachusetts.[8] Tufts offered Dr. Cauley a one-year position, subject to a credentialing process that required a reference from a clinical supervisor within two years of clinical practice.[9] Dr. Cauley provided as his reference Dr. Christopher Filippi, then a chairman at Tufts and previously Dr. Cauley's clinical supervisor at Columbia Presbyterian in New York, New York.[10] The Tufts credentialing representative informed Dr. Cauley that Dr. Filippi agreed to serve as his clinical reference.[11]

One week later, Tufts cancelled the credentialing process.[12] Dr. Cauley then spoke with Dr. Filippi to figure out what happened.[13] Dr. Filippi informed Dr. Cauley that he was aware of a memorandum circulated at Geisinger indicating that anyone who provided a professional reference for Dr. Cauley would be in legal

---

6    *Id.* ¶ 36–37.
7    *Id.* ¶ 38; *see also* Doc. 21, Ex. B (J. Weinstock Sept. 13, 2019 Email).
8    Doc. 21 ¶ 42.
9    *Id.* ¶¶ 43–48.
10   *Id.* ¶¶ 53–55.
11   *Id.* ¶ 56.
12   *Id.* ¶ 57.
13   *Id.* ¶ 58.

jeopardy.[14] The memorandum "called into question Dr. Cauley's professional capacity."[15] Further, it is Dr. Cauley's understanding that Geisinger representatives "informed other prospective employers of Dr. Cauley of information relating to an internal investigation" that similarly "call[ed] into question Dr. Cauley's abilities as a radiologist."[16]

On January 8, 2021, Dr. Cauley filed suit against "Geisinger Health," advancing claims for breach of contract, misrepresentation, and defamation.[17] The following month, Dr. Cauley amended his complaint, substituting Geisinger Clinic as the defendant.[18] Geisinger filed its first motion to dismiss on April 19, 2021,[19] and its supporting memorandum of law on May 3, 2021.[20]

Seven days later, on May 10, 2021, Dr. Cauley filed the Second Amended Complaint, which included four counts: (1) breach of contract; (2) promissory estoppel; (3) intentional misrepresentation; and (4) defamation.[21] Geisinger filed a motion to dismiss the Second Amended Complaint on May 24, 2021.[22] The motion has been fully briefed and is now ripe for disposition.[23]

---

[14]   *Id*. ¶ 59.
[15]   *Id*. ¶ 101.
[16]   *Id*. ¶ 103.
[17]   Doc. 1.
[18]   Doc. 8. Throughout this opinion, "Geisinger" refers to Geisinger Clinic.
[19]   Doc. 17.
[20]   Doc. 19.
[21]   Doc. 21.
[22]   Doc. 24.
[23]   *See* Doc. 26; Doc. 27; Doc. 28.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a claim"[24] and "streamlines litigation by dispensing with needless discovery and factfinding."[25] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[26] This is true of any claim "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[27]

Following the Roberts Court's "civil procedure revival,"[28] the landmark decisions of *Bell Atlantic Corp. v. Twombly*[29] and *Ashcroft v. Iqbal*[30] tightened the standard that district courts must apply to 12(b)(6) motions.[31] These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[32]

---

[24] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[25] *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[26] *Id.* at 326 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[27] *Id.* at 327.

[28] Howard M. Wasserman, The Roberts Court and the Civil Procedure Revival, 31 Rev. Litig. 313, 316, 319–20 (2012).

[29] 550 U.S. 544 (2007).

[30] 556 U.S. 662 (2009).

[31] *Id.* at 670 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957))

[32] *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[35] Moreover, "[a]sking for plausible grounds . . . calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[36]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[37] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[38]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

---

[33] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[34] *Id.*

[35] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotation marks and citations omitted).

[36] *Twombly*, 550 U.S. at 556.

[37] *Iqbal*, 556 U.S. at 679.

[38] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

alleged in the light most favorable to [the plaintiff]."[39] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[40] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[41]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[42]

## III.   ANALYSIS

### A.      Promissory Estoppel (Count II)

Geisinger first moves to dismiss Dr. Cauley's promissory estoppel claim, arguing that a plaintiff cannot simultaneously pursue claims for breach of contract and promissory estoppel based on the same agreement.[43] But that's not quite right.

---

[39] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[40] *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[41] *Iqbal*, 556 U.S. at 678.

[42] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[43] Doc. 26 at 5–7.

Under Pennsylvania law, "[a] cause of action for promissory estoppel arises when a party relies to his detriment on the representations of another party."[44] The Third Circuit explains that "[i]t operates to protect a promisee whose reliance cannot be secured by contract because the promise on which he relied was unsupported by consideration."[45] Because "promissory estoppel has no application when parties have entered into an enforceable agreement, . . . the finding of an enforceable contract defeats the validity of promissory estoppel" claims.[46]

That said, Federal Rule of Civil Procedure 8(a) permits plaintiffs to seek "relief in the alternative."[47] Courts therefore consider it "proper for [plaintiffs] to plead [claims] for promissory estoppel as an alternative to [their] breach of contract claims," particularly where "the validity and terms of the contract[s] have not been determined."[48]

Here, Geisinger argues that "[b]ecause Dr. Cauley has pled the existence of a contract and has not challenged the validity of the contract, he cannot also state a viable claim for promissory estoppel."[49] But the issue is not whether *Dr. Cauley* challenged the validity of the September 19, 2020 contract, but, rather, whether

---

[44] *Synesiou v. DesignToMarket, Inc.*, 2002 WL 501494, *4 (E.D. Pa. Apr. 3, 2002) (citing *Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411, 416 (3d Cir. 1990); *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa. Super. 1997)).

[45] *Messaro Ltd. Partnership (Park West Two) v. Baker v. Taylor Inc.*, 161 F. App'x 185, 188 (3d Cir. 2005); *see also Fried v. Fisher*, 196 A. 39, 41 (Pa. 1938).

[46] *Synesiou*, 2002 WL 501494, at *4 (citing *Carlson*, 918 F.2d at 416).

[47] Fed. R. Civ. P. 8(a)(3).

[48] *TAKTL, LLC v. IWR, North America, LLC*, 2020 WL 5802994, at *3 (W.D. Pa. Aug. 20, 2020).

[49] Doc. 26 at 7.

*Geisinger* disputes the existence and terms of the contract.[50] In its reply, Geisinger could have conceded that the contract exists and is binding on the parties. It declined to do so.[51]

Because the existence and terms of the alleged contract between the parties remain in dispute, dismissal of Cauley's promissory estoppel claim would be premature.[52] Geisinger's motion to dismiss Count II of the Second Amended Complaint is therefore denied.

## B.     Intentional Misrepresentation (Count III)

Geisinger next argues that Dr. Cauley's intentional misrepresentation claim is "barred by the gist of the action doctrine."[53] Dr. Cauley responds that the gist of the action doctrine is inapplicable because his intentional misrepresentation claim concerns "fraud in the inducement," which "implicate[s] the larger social policies of a tort action."[54] On this, the Court agrees with Geisinger.

Under Pennsylvania law, "the 'gist of the action' doctrine bars plaintiffs from brining a tort claim that merely replicates a claim for breach of an underlying contract."[55] To determine whether a claim sounds in contract or tort, Pennsylvania

---

[50]   *See Synesiou*, 2002 WL 501494, at *4 (dismissing promissory estoppel claim "because the parties agree that a valid employment agreement exists").

[51]   *See* Doc. 28 at 3.

[52]   *See TAKTL*, 2020 WL 5802994, at *3 n.1 ("Of course, if it is found that a valid contract exists, [the] claim for promissory estoppel would be foreclosed.").

[53]   Doc. 26 at 7.

[54]   Doc. 27 at 15 ("In the present case, it is alleged that the fraud induced Dr. Cauley to terminate the existing contract between the parties.").

[55]   *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (citing *Phico Insurance Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995)).

courts consider "the *nature* of the duty breached."[56] If the duty breached "is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract."[57] Conversely, if the claim "involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[58]

The issue of "whether (and when) the gist of the action doctrine applies to bar fraudulent inducement claims" remains unresolved.[59] Because the Pennsylvania Supreme Court has not discussed this issue, Pennsylvania's intermediate courts and courts of this Circuit have endeavored to predict how it would likely rule. The results vary.

Pennsylvania appellate courts have adopted a categorical approach, holding that where a party's "tort claims relate to the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the-action doctrine."[60] Conversely, following Judge Stewart R. Dalzell's

---

[56] *Bruno v. Erie Insurance Co.*, 106 A.3d 48, 63 (Pa. 2014).

[57] *Id*. at 68.

[58] *Id*.

[59] *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 517 (E.D. Pa. 2012).

[60] *Sullivan v. Chartwell Investment Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005); *see also Mirizio v. Joseph*, 4 A.3d 1073, 1085 (Pa. Super. 2010) (holding that the defendant's "actions constituted fraud in the inducement, and therefore, the claim for fraud was not barred by the gist of the action doctrine").

cogent and persuasive opinion in *Vives v. Rodriquez*,[61] district courts in this Circuit

generally employ a more fact-specific analysis to determine whether the tort and

contract claims are "interwoven," thus precluding the tort claim, or whether the

fraud claim is "collateral" to the contract.[62] Courts consider claims "interwoven"

where the alleged misrepresentations that induced the plaintiff to enter the contract

were "later incorporated" into the agreement.[63] Put differently, courts of this

Circuit have consistently held that "the gist of the action doctrine bars tort claims

concerning the promisor's intent to perform under the contract."[64]

Consistent with the courts of this Circuit, this Court declines to adopt the

categorical approach propounded by the Pennsylvania Superior Court in *Sullivan*,[65]

and instead endorses the fact-specific analysis offered by Judge Dalzell in *Vives*.[66]

---

[61]  849 F. Supp. 2d at 516–22.

[62]  *Diodato v. Wells Fargo Insurance Services, USA, Inc.*, 44 F. Supp. 3d 541, 554–55 (M.D. Pa. 2014) (Connor, J.); *see also Wen v. Willis*, 117 F. Supp. 3d 673, 681–83 (E.D. Pa. 2015) (finding that Judge Dalzell's decision in *Vives* "is the most instructive and, ultimately, persuasive on [the] issue" of "whether (and when) the gist of the action doctrine applies to bar fraudulent inducement claims"); *Irish Isle Provision Co., Inc. v. Polar Leasing Co., Inc.*, 2013 WL 6077362, at *5 (M.D. Pa. Nov. 19, 2013) (adopting Judge Dalzell's analysis in *Vives*).

[63]  *Wen*, 117 F. Supp. 3d at 682–83; *see also Niiaryee v. Davison Design & Development, Inc.*, 2018 WL 1072439, at *6 (W.D. Pa. Feb. 27, 2018) ("[T]he 'gist of the action' doctrine bars fraudulent inducement claims where the false representation concerned duties later enshrined in the contract."); *cf. Morrison v. AccuWeather, Inc.*, 2015 WL 4357346, at *6 (M.D. Pa. July 14, 2015) (holding that "the gist of the action doctrine does not act to bar Plaintiff's fraudulent misrepresentation claim on" the alleged misrepresentations *not* included the contract).

[64]  *North American Communications, Inc. v. Herman*, 2018 WL 2186422, at *4 (W.D. Pa. May 11, 2018); *see also Malone v. Weiss*, 2018 WL 827433, at *5 (E.D. Pa. Feb. 12, 2018) ("Permitting a fraudulent inducement claim [based on the allegation that the defendant never intended to honor the contract] would essentially negate the entire . . . gist of the action doctrine because a Plaintiff would have only to allege that Defendants never intended to abide by a provision in their contract in order to escape dismissal.").

[65]  873 A.2d at 719.

[66]  849 F. Supp. 2d at 516–22.

Accordingly, the Court must analyze the alleged misrepresentations that Dr. Cauley argues induced him to enter the contract with Geisinger and determine whether they are interwoven with, or collateral to, the September 13, 2019 contract underlying Dr. Cauley's breach of contract claim.

Here, Dr. Cauley identifies four allegedly false representations Geisinger made at the September 13, 2019 meeting that induced him to resign: Geisinger would (1) "[p]ermit Dr. Cauley to meet to review the peer reviews"; (2) "[o]nly provide neutral references regarding Dr. Cauley's employment including only dates of employment"; (3) [r]efrain from conducting activity that could result in a report to the NPDB"; and (4) "[r]efrain from including in Dr. Cauley's personnel file anything regarding the peer reviews or negative references."[67] According to the Second Amended Complaint, these representations formed the basis of the contract Geisinger purportedly breached.[68] As such, Dr. Cauley predicates his intentional misrepresentation claim on his belief that Geisinger "never intended to follow through" on its alleged contractual obligations.[69]

---

[67] Doc. 21 ¶ 81.

[68] *See id.* ¶ 82 (citing Doc. 21, Ex B (J. Weinstock Sept. 13, 2019 Email)) (Count III: "These statements by Geisinger Clinic were memorialized by email dated September 13, 2019 between Jason Weinstock and Donald Zakowski, counsel on behalf of Geisinger Clinic."), ¶ 67 (citing Doc. 21, Ex B (J. Weinstock Sept. 13, 2019 Email)) (Count I: "This agreement was memorialized by email dated September 13, 2019 between Jason Weinstock and Donald Zakowski, counsel on behalf of Geisinger Clinic.").

[69] *Id.* ¶ 83.

Properly understood, this claim sounds in contract, not tort. Because the alleged misrepresentations concern only Geisinger's intent to perform under the alleged contract, the tort and contract claims are necessarily "interwoven."[70] Accordingly, Dr. Cauley's intentional misrepresentation claim is barred by the gist of the action doctrine.[71]

### C.   Defamation (Count IV)

Lastly, Geisinger moves to dismiss Dr. Cauley's defamation claim, citing three separate bases for dismissal: (1) the gist of the action doctrine; (2) the failure to provide sufficient factual specificity to satisfy the pleading burden; and (3) the failure to allege abuse of the conditional privilege.[72] Although the defamation claim survives the first challenge, it falls victim to both the second and third.

### 1.   Gist of the Action Doctrine

Geisinger argues that like the intentional misrepresentation claim, the defamation claim should be dismissed under the gist of the action doctrine.[73] According to Geisinger, because Dr. Cauley alleges that Geisinger "agreed to provide only neutral references" and then "purports to base his defamation claim upon statements allegedly made by [Geisinger] to prospective employers," the duty Dr. Cauley alleges Geisinger breached "is a purported contractual duty stemming

---

[70]   *Diodato*, 44 F. Supp. 3d at 554–55.
[71]   *See, e.g.*, *North American Communications*, 2018 WL 2186422, at *4.
[72]   Doc. 26 at 9–17.
[73]   *Id*. at 9–10.

from [the] September 13, 2019 agreement."[74] Put differently, "to the extent [Geisinger] had an obligation to provide future employers of Dr. Cauley with only neutral references, such obligation arose solely from the September 13, 2019, Agreement."[75] That's incorrect.

To state a claim for defamation, a plaintiff must show (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) the abuse of a conditionally privileged occasion.[76] Under Pennsylvania law, "a statement is capable of a defamatory meaning" if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him."[77] Pennsylvania courts have held that statements by a former employer to a prospective employer implying that the plaintiff's "background or ability is somehow deficient for a position" in his field are "capable of a defamatory meaning," and therefore sufficient to sustain a cause of action for defamation.[78]

---

[74]  *Id*.

[75]  Doc. 28 at 5.

[76]  42. Pa. C.S.A. § 8343(a).

[77]  *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004).

[78]  *Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237, 241 (Pa. Super. 1993).

Here, Dr. Cauley alleges that Geisinger sent its employees an internal memorandum "that called into question Dr. Cauley's professional capacity," and likewise "circulated to [Dr. Cauley's] prospective employers" false information "relating to [his] abilities as a radiologist."[79] The arguably defamatory nature of these statements is not predicated on Geisinger's purported contractual commitment to provide only "neutral references" about Dr. Cauley's employment at Geisinger. That is, absent the September 13, 2019 agreement, Geisinger could have defamed Dr. Cauley by telling his former colleagues and prospective employers that his "ability is somehow deficient for a position" in the medical field.[80]

As such, the gist of the action doctrine does not mandate dismissal of Dr. Cauley's defamation claim.

### 2.    Pleading Specificity

Separately, Geisinger argues that Dr. Cauley's defamation claim should be dismissed "because he failed to provide sufficient factual specificity to satisfy his pleading burden pursuant to *Twombly* and *Iqbal*."[81] The Court agrees.

Under Federal Rule of Civil Procedure 8, "to bring a claim for defamation in federal court, only notice pleading is required to survive a motion to dismiss."[82]

---

[79]   Doc. 21 ¶¶ 101–104.

[80]   *Walker*, 634 A.2d at 241.

[81]   Doc. 26 at 10.

[82]   *Peoples State Bank of Wyalusing, PA v. Wellsburg Truck Auto Sales, Inc.*, 2010 WL 4922877, at *3 (M.D. Pa. Nov. 29, 2010) (Caputo, J.) (citing Fed. R. Civ. P. 8).

That is, "the plaintiff does not have to plead the precise defamatory statement as long as the count provides sufficient notice to the defendant."[83] Unfortunately, judges in this district disagree about what facts are required to "provide[] sufficient notice."[84]

In *Peoples State Bank of Wyalusing, PA v. Wellsburg Truck Auto Sales, Inc.*, Judge A. Richard Caputo held that for defamation claims, notice pleading requires the plaintiff to allege "to *whom* the [allegedly defamatory] words were spoken, *where* they were spoken, [and] *when* they were spoken."[85] This accords with Judge Christopher C. Connor's ruling in *Fiedler v. Shady Grove Reproductive Science Center, P.C.*,[86] and Judge Yvette Kane's decision in *Klatch-Maynard v. Sugarloaf Township*.[87] Conversely, in *Reager v. Williams*, Judge James M. Munley permitted a defamation claim to proceed past the motion to dismiss phase despite the complaint failing to detail "what the allegedly defamatory statements were and who made the statements and to whom they were made."[88] Judge Munley held that allegations that the defendants "attempted to create the impression that plaintiff is

---

[83]  *Roskos v. Sugarloaf Township*, 295 F. Supp. 2d 480, 492 (M.D. Pa. 2003) (Conaboy, J.).

[84]  *Id.*

[85]  2010 WL 4922877, at *4.

[86]  2014 WL 3535558, at *4–5 (M.D. Pa. July 16, 2014) (Connor, J.) (dismissing defamation claim where plaintiff "fails to allege where or how the statement was made" and "when the statement was made").

[87]  2012 WL 3597185, at *3 (M.D. Pa. Aug. 20, 2012) (dismissing defamation claim when plaintiff failed to satisfy "obligation to put forth evidence that a defamatory statement was made," which "includes putting forth evidence that a defamatory statement was made on a particular date").

[88]  2009 WL 3182053, at *4–5 (M.D. Pa. Sept. 25, 2009) (Munley, J.) (internal quotation marks omitted).

morally depraved and paint the plaintiff in a bad light portraying him as an immoral individual conducting business in a dirty way that included victimizing young women" were "sufficient to place the defendants on notice of the defamation claim and sufficiently precise for the defendants to respond to the them."[89]

With due respect to Judge Munley, I agree with Judges Caputo, Connor, and Kane: to survive a motion to dismiss, a plaintiff advancing a defamation claim must allege, at a minimum, who made the allegedly defamatory statement, to whom the statement was made, where it was made, and when it was made. The federal pleading standards may be liberal, but they require more than bare allegations that "fail[] to identify with any degree of specificity the substance and circumstances of the representations at issue."[90]

On this standard, the Second Amended Complaint fails, as neither the allegations regarding the purported memorandum nor the allegations about the statements to Dr. Cauley's "other prospective employers" contain the specificity needed to sustain a claim for defamation. For the memorandum, the Second Amended Complaint provides that "Dr. Filippi informed Dr. Cauley that he was aware that a memorandum had circulated at [Geisinger] indicating that anyone who provided a professional reference for Dr. Cauley would be in legal jeopardy."[91] Dr.

---

[89]   *Id.* at *5.
[90]   *Fiedler*, 2014 WL 3535558, at *5.
[91]   Doc. 21 ¶ 59.

Cauley further alleges that Geisinger issued this memorandum "to [its] staff members and prior colleagues of Dr. Cauley who remained employed with Geisinger."[92] But these allegations lack certain critical information. Specifically, Dr. Cauley does not state who drafted or distributed the memorandum, when it was sent to Geisinger staff, and which Geisinger employees received it. Moreover, to the extent Dr. Cauley predicates his defamation claim on the disclosure of this memorandum to Dr. Filippi, Dr. Cauley does not allege who informed Dr. Filippi of the memorandum or when and where this disclosure occurred.

For the statements to his prospective employers, Dr. Cauley alleges only that "upon information and belief, representatives of [Geisinger] have informed other prospective employers of Dr. Cauley of information relating to an internal investigation by [Geisinger] that improperly calls into question Dr. Cauley's abilities as a radiologist."[93] The Second Amended Complaint provides no further information about these alleged communications—it does not detail who at Geisinger spoke with Dr. Cauley's prospective employers, which prospective employers the Geisinger representatives spoke with, or when and where these conversations took place.

Because the Second Amended Complaint does not identify with any degree of specificity the circumstances of the allegedly defamatory representations at

---

[92]  *Id.* ¶ 92.
[93]  *Id.* ¶ 103.

issue—i.e., who made the statements, to whom they were made, and when and where they were made—Dr. Cauley's defamation claim fails to meet the pleading requirements of the Federal Rules of Civil Procedure.

### 3.    Conditional Privilege

Finally, Geisinger asserts that the defamation claim should be dismissed because "[t]he allegedly defamatory communications are subject to a conditional privilege and Dr. Cauley has failed to sufficiently allege abuse of that privilege."[94] Dr. Cauley responds that he adequately alleges that the defamatory statements were made "without privilege in that [he] has never in fact undergone a legitimate, formal internal peer review, but rather was subjected to a 'sham peer review.'"[95] Further, Dr. Cauley argues that dismissal on this basis would be premature, as "[w]ithout additional evidence that would take the parties outside the pleadings, [Geisinger] cannot meet its burden of establishing the existence of a privilege so as to have caused any burden to have shifted to Dr. Cauley to have to establish that a privilege was abused."[96]

Under Pennsylvania law, even if a plaintiff demonstrates that the defendant published a defamatory statement, the defendant "is not liable if the publication was made subject to a privilege, and the privilege was not abused."[97] Statements

---

[94]   Doc. 26 at 14.
[95]   Doc. 27 at 17–18 (citing Doc. 21 ¶¶ 35, 102, 106).
[96]   *Id*. at 19–20.
[97]   *Elia v. Erie Insurance Exchange*, 634 A.2d 657, 660 (Pa. Super. 1993), *appeal denied*, 644 A.2d 1200 (Pa. 1994).

qualify as "conditionally privileged" if the publisher "reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know."[98] Accordingly, "[i]ntra-department communications" about employee performance are "protected by the conditional privilege."[99] Similarly, because courts recognize that a "plaintiff's prospective employers fall within that circle of those who reasonably need to know the reason for [the] plaintiff's dismissal,"[100] it is generally accepted that the conditional privilege "applies to private communications among employers regarding discharge and discipline."[101]

As the parties acknowledge,[102] "[w]hether a communication is conditionally privileged is a question for the court."[103] If a court finds that the defendant established that a conditional privilege applies, a claim for defamation avoids dismissal only if the plaintiff alleges specific facts "suggesting the privilege was abused."[104] Pennsylvania courts have provided the following guidance for determining whether a defendant abused a conditional privilege:

---

[98] *Bargerstock v. Washington Greene Community Action Corp.*, 580 A.2d 361, 364 (Pa. Super. 1990).

[99] *Momah v. Albert Einstein Medical Center*, 978 F. Supp. 621, 635 (E.D. Pa. 1997), *affirmed*, 229 F.3d 1138 (3d Cir. 2000).

[100] *Id*. at 636.

[101] *Bargerstock*, 580 A.2d at 364.

[102] *See* Doc. 27 at 18 (noting that "the existence of a privilege is a question of law").

[103] *Bargerstock*, 580 A.2d at 364.

[104] *Udodi v. Stern*, 438 F. Supp. 3d 293, 303–04 (E.D. Pa. 2020); *see also Lapinski v. Poling*, 2017 WL 1291496, at *10 (Pa. Super. Apr. 7, 2017) (dismissing defamation claim as "legally insufficient" because "Appellants' single conclusory averment that Appellees did not have privilege to make their statements" does not satisfy the "require[ment] to plead adequate facts concerning Appellees' alleged abuse of a conditional privilege").

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.[105]

Here, Dr. Cauley predicates his defamation claim on statements Geisinger allegedly made to its employees and to Dr. Cauley's prospective employers regarding Dr. Cauley's professional performance and the reasons for his discharge.[106] Because "intra-department communications" about employee performance and "communications among employers regarding discharge and discipline" qualify as conditionally privileged,[107] both allegedly defamatory statements are protected.

Next, this Court must determine whether Dr. Cauley alleges specific facts "suggesting that the privilege was abused."[108] In the Second Amended Complaint, Dr. Cauley asserts that Geisinger's "defamatory comments . . . were unnecessary to carry out any privileged activity, and were motivated out of malice towards Dr. Cauley."[109] Dr. Cauley cites "[a]s evidence of this" only the purported contract

---

[105] *Foster v. UPMC South Side Hospital*, 2 A.3d 655, 665 (Pa. Super. 2010), *appeal denied*, 12 A.3d 371 (Pa. 2010).

[106] Doc. 21 ¶¶ 101–104.

[107] *Momah*, 978 F. Supp. at 635; *Bargerstock*, 580 A.2d at 364.

[108] *Udodi*, 438 F. Supp. 3d at 303–04.

[109] Doc. 21 ¶ 106.

whereby Geisinger "agreed to provide only a neutral employment reference."[110] According to Dr. Cauley, "this agreement indicated no need to provide any further information about Dr. Cauley's abilities as a radiologist under the guise of protecting the public."[111]

But that's not right. Even accepting as true the existence of this contract between Geisinger and Dr. Cauley, the terms of that agreement do not establish the legal parameters for abuse of a conditional privilege. Rather, the question is whether the publication "is actuated by malice or negligence" or "is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose."[112] Here, both the statements to Geisinger's employees and to Dr. Cauley's prospective employers fall under the "purpose for which the privilege is given" and the recipients qualify as people "reasonably believed to be necessary for the accomplishment of the purpose"[113]—the internal memorandum is an "[i]ntra-department communication[]" about Dr. Cauley's employee performance, and Dr. Cauley's prospective employers "fall within that circle of those who reasonably need to know the reason for [the] plaintiff's dismissal."[114]

---

[110] *Id.* ¶ 107.

[111] *Id.*

[112] *Foster*, 2 A.3d at 665.

[113] *Id.*

[114] *Momah*, 978 F. Supp. at 635–36.

Further, Dr. Cauley has not established that Geisinger's statements were "actuated by malice or negligence." Providing Dr. Cauley's future employers with negative references—in contravention of a contractual agreement to provide only neutral references—may very well constitute breach of contract. But that, without more, does not make Geisinger's actions negligent, and does not prove that such actions were "motivated by malice towards Dr. Cauley."[115] As such, the Court finds that the purportedly defamatory statements are conditionally privileged and that Dr. Cauley has not alleged specific facts suggesting the privilege was abused.

## IV.   CONCLUSION

Geisinger's motion to dismiss Counts II–IV of the Second Amended Complaint is denied in part and granted in part. Because plaintiffs are permitted to plead claims for promissory estoppel as an alternative to their breach of contract claims, Geisinger's motion to dismiss Count II is denied. Conversely, Dr. Cauley's intentional misrepresentation claim (Count III) is dismissed with prejudice: this Count sounds in contract, not tort, and is therefore barred by the gist of the action doctrine. Lastly, the Second Amended Complaint does not contain allegations detailing the circumstances of the alleged defamatory statements at issue or suggesting that Geisinger abused its conditional privilege. Count IV is therefore

---

[115] Doc. 21 ¶ 106.

dismissed, but with leave to plead to over; to the extent Dr. Cauley can remedy this Count's deficiencies with additional factual allegations, he may do so.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge