## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CAULEY, M.D., Ph.D.,

        Plaintiff,

    v.

GEISINGER CLINIC,

        Defendant,

No. 4:21-CV-00045

(Chief Judge Brann)

### MEMORANDUM OPINION

### SEPTEMBER 1, 2023

Keith Cauley, M.D., Ph.D., a physician previously employed by Geisinger Clinic ("Geisinger"), sued his former employer in connection with his involuntary resignation from Geisinger. This Court eventually granted in part Geisinger's motion to dismiss Cauley's second amended complaint, but granted leave to file a third amended complaint by February of 2022. Cauley blatantly ignored this deadline. Instead, during discovery he engaged in what appears to the Court to have been a fishing expedition seeking evidence to support the dismissed claim and others. Having purportedly found such evidence, he now seeks leave to file a third amended complaint—well after the close of discovery and shortly prior to Geisinger having file a motion for summary judgment. Because Cauley's proposed amendment will unduly prejudice Geisinger, and because he cannot demonstrate good cause for the proposed amendment, his motion will be denied.

## I.  BACKGROUND

In January 2021, Cauley filed a complaint in this matter, which he subsequently twice amended.[1] His second amended complaint, filed in May 2021, raised claims for breach of contract, promissory estoppel, intentional misrepresentation, and defamation.[2]

Those claims relate to Cauley's 2019 termination from his employment as a radiologist at Geisinger. Cauley alleges that, in August 2019, he was placed on administrative leave from his clinical duties as a result of an internal peer review.[3] Cauley "was informed that the peer review evidenced poor performance on his behalf," specifically with respect to "Type II errors," although Geisinger provided him with no details concerning the peer review.[4]

Cauley was informed during a meeting with Geisinger's human resources department that he could resign his employment, in which case he would not be reported to the National Provider Data Bank ("NPDB"), or he could challenge the peer review, in which case, if the peer review was upheld, he would be reported to the NPDB.[5] In September 2019, Cauley and Geisinger reached an agreement whereby Cauley would resign from Geisinger and, in return, Geisinger would (1)

---

[1]   Docs. 1, 8, 21.
[2]   Doc. 21 at 11-20.
[3]   *Id.* ¶¶ 14-18.
[4]   *Id.* ¶¶ 19-22.
[5]   *Id.* ¶¶ 26-27.

permit Cauley to examine the peer reviews, (2) provide only neutral references for Cauley, (3) refrain from any activity that could result in a report to the NPDB regarding Cauley, and (4) refrain from including reference to the peer reviews or any negative references in Cauley's personnel file.[6]

Cauley later applied for a position with Tufts Medical Center ("Tufts") but, before a contract could be finalized, a credentialing process was required that involved a reference from a clinical supervisor.[7] The credentialing process was later abruptly terminated, and Cauley was informed that Tufts was aware that Cauley had resigned from Geisinger under threat of termination, and that a memorandum had circulated at Geisinger warning employees that anyone who provided a professional reference for Cauley "would be in legal jeopardy."[8] Cauley further alleges that Geisinger has failed to provide Cauley with the peer reviews as it had agreed.[9]

Geisinger filed a motion to dismiss the second amended complaint, which was granted in part.[10] Specifically, this Court dismissed Cauley's claim for intentional misrepresentation after determining that the gist of the action doctrine barred that claim, since that tort claim merely replicated Cauley's breach of contract claim.[11] The Court further dismissed Cauley's defamation claim, as he failed to adequately

---

[6]   *Id.* ¶¶ 36-37.
[7]   *Id.* ¶¶ 42-48.
[8]   *Id.* ¶¶ 57-60.
[9]   *Id.* ¶ 62.
[10]   Docs. 24, 30, 31.
[11]   Doc. 30 at 9-13.

aver who had drafted or distributed the memorandum within Geisinger, to whom the memorandum had been sent, or who disclosed its existence to Tufts; as to statements made by Geisinger to prospective employees, Cauley failed to allege who made the statements, to whom they were made, or when they were made.[12] The defamation claim also failed because Cauley did not adequately allege that Geisinger's conditional privilege to make the challenged statements had been abused.[13]

Despite dismissing two of Cauley's claims, this Court granted permission for Cauley to plead over on his defamation claim.[14] However, the Court left the door open for Cauley to file a third amended complaint only for a short time, instructing Cauley that "he must file the amended complaint on or before February 17, 2022."[15]

Cauley did not file a third amended complaint by that date, and discovery commenced in this matter. Discovery ultimately concluded on June 10, 2023, with a dispositive motion deadline of August 10, 2023.[16]

On July 31, 2023, Cauley moved to file a third amended complaint.[17] In his motion, Cauley asserts that he should be permitted to again amend his complaint to add claims for fraudulent inducement and defamation.[18] Cauley contends that this proposed amendment is based upon information obtained during the course of

---

[12]   *Id.* at 13-19.
[13]   *Id.* at 19-23.
[14]   *Id.* at 23-24.
[15]   Doc. 31.
[16]   Doc. 57.
[17]   Doc. 68.
[18]   *See* Doc. 68-3.

discovery. As to the fraudulent inducement claim, Cauley argues that he discovered Geisinger had "misrepresented its authority" to report Cauley to the NPDB, as "there was no legitimate basis for doing so."[19] In reality, Cauley asserts, Geisinger could not report him to the NPDB because "Geisinger had not met the requirements of due process required by the NPDB."[20] Geisinger's empty threat allegedly wrongly induced Cauley's resignation.

Cauley further attempts to bolster his defamation claim with additional facts gleaned from the deposition of Dr. William Millar. Specifically, Cauley asserts that he had applied for employment at Northwell Health ("Northwell") in 2019.[21] During discovery Cauley learned that Millar, who had been Cauley's principal supervisor for three- and one-half years at Geisinger, had been contacted by Northwell.[22] Millar allegedly informed the chair of radiology at Northwell—Jesse Chusid, M.D.—that Cauley "would not be a good fit at Northwell," after which Chusid told the chief of radiology at Northwell that Cauley's former chief provided a poor recommendation for Cauley, and Chusid therefore would not endorse Cauley's employment at Northwell.[23] Cauley avers that Millar's statements were defamatory.

---

[19]   Doc. 68 at 7.
[20]   *Id.* at 16.
[21]   *Id.* at 6.
[22]   *Id.*
[23]   *Id.* at 6-7.

Cauley argues that his motion should be granted because there is good cause for the amendment, as he was not aware of the bases for these claims until he received certain evidence during discovery, at which point he "diligently and promptly moved to amend the pleadings."[24] He further asserts that Geisinger "will not suffer any prejudice" from the proposed amendment.[25]

Geisinger responds that the motion should be denied for two reasons.[26] First, Geisinger argues that there was undue delay in seeking to amend the pleadings, as the motion was filed approximately three months after Cauley conducted the deposition in which he asserts he discovered the new information, almost two months after the close of discovery, and on the eve of the dispositive motion deadline.[27] Second, Geisinger contends that permitting the third amended complaint would prejudice it since discovery is closed, a dispositive motion has now been filed, and the impetus for the motion to amend is stale.[28]

Cauley filed a belated reply brief,[29] and the matter is now ripe for disposition. For the following reasons, the motion will be denied.

---

[24]   Doc. 69 at 7; *see id.* at 6-8.
[25]   *Id.* at 8.
[26]   Doc. 73.
[27]   *Id.* at 4-8.
[28]   *Id.* at 8-10.
[29]   Doc. 79.

## II.   DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) provides that when, as here, a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Courts "should freely give leave when justice so requires,"[30] and the United States Court of Appeals for the Third Circuit instructs that "motions to amend pleadings should be liberally granted."[31] The Third Circuit has repeatedly "held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."[32]

Where amendment is governed by a scheduling order, as is the case here, the party seeking to amend that order must further show "good cause."[33] A movant "must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."[34] The question of "whether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence."[35] The burden falls on the plaintiff "to demonstrate good cause and due diligence."[36]

---

[30]   Fed. R. Civ. P. 15(a)(2).
[31]   *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).
[32]   *Id.* (emphasis, brackets, and internal quotation marks omitted).
[33]   Fed. R. Civ. P. 16(b).
[34]   *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).
[35]   *Id.* (internal quotation marks omitted).
[36]   *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).

Cauley's motion to amend will be denied for two reasons. First, he has failed to demonstrate due diligence, which in turn indicates that there is no good cause to amend. Second, even if good cause existed, amendment would result in undue prejudice to Geisinger, which would independently necessitate denial of Geisinger's motion.

As to good cause, contrary to Cauley's conclusory assertions,[37] his lack of diligence in moving to amend the complaint is fatal to the motion. This Court dismissed in part Cauley's second amended complaint in January 2022, and granted leave to file an amended complaint on or before February 17, 2022.[38] Cauley did not do so. Instead, he began the process of discovery. And even then, Cauley did not immediately seek information that would validate his defamation claim or his later-developed fraudulent inducement claim—rather, he obtained that information more than one year later.[39] After Cauley obtained the information that he says is critical to his new claims, all of which he received by April 28, 2023,[40] he waited another 94 days before filing a motion to amend.[41] This delay resulted in the motion to amend being filed well after the discovery deadline lapsed on June 10, 2023.[42]

---

[37]   Doc. 69 at 8.
[38]   Doc. 21.
[39]   *See* Docs. 73-1, 73-2.
[40]   *Id.*
[41]   Doc. 68.
[42]   *See* Doc. 57.

This extreme delay in filing a motion to amend meant that, because the deadline to conduct discovery had lapsed, Geisinger is deprived of the ability to gain information that may help it defend against the proposed claims. Cauley provides no reason for this delay. Such a delay indicates that Cauley has failed to "demonstrate the requisite 'good cause' for the amendment, as it was requested after the deadline for amending pleadings and after the close of discovery."[43]

Turning then to the question of prejudice, that issue "requires that [the Court] focus on the hardship to the defendants if the amendment were permitted."[44] The Third Circuit has held that courts should "consider[] whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."[45]

Here, Cauley's proposed third amended complaint would undoubtedly result in substantial prejudice. As noted previously, discovery is closed and Geisinger has filed a dispositive motion.[46] And, although the new factual allegations are fairly sparse, contained, and straightforward, these allegations would require additional discovery for Geisinger—something that cannot be easily accomplished since discovery is now closed.[47]

---

[43]   *Jackson v. City of Philadelphia*, 535 F. App'x 64, 69 (3d Cir. 2013).
[44]   *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).
[45]   *Id.*
[46]   Docs. 57, 74.
[47]   And even if discovery were reopened, further discovery would obviously entail additional expenses and would unnecessarily delay resolution of this case.

The new claims would require Geisinger and its counsel to investigate what legal authority would permit Geisinger to report Cauley to the NPDB, which is apparently difficult to do as, more than 18 months after the dismissal of Cauley's second amended complaint, he still is able to allege only upon "information and belief" that Geisinger lacked such authority.[48] Geisinger would further need to investigate whether a basis to make such a report existed at the time that Cauley was allegedly threatened with a report to the NPDB and, if not, whether the employee(s) who allegedly made such a threat believed in good faith that a report could nonetheless have been filed.[49]

Geisinger would further need to investigate any contact between Dr. Christopher Filippi and Dr. Aalpen Patel and determine what information Patel may have shared with Filippi and when.[50] Similarly, Geisinger would need to investigate and analyze any contacts between Millar and Chusid—specifically what was said, when, and in what capacity; this is especially true since the email that Cauley has attached to his proposed third amended complaint does not actually discuss or reference any negative statements made by Millar regarding Cauley.[51] Given these significant discovery burdens,[52] and the fact that Cauley's proposed amendment

---

[48]   Doc. 68-3 at 7.
[49]   *See id.* at 25-28 (outlining basis of claim for fraudulent inducement).
[50]   *See id.* at 11-12, 22-23 (outlining certain allegations regarding defamation claim).
[51]   Doc. 68-3 at 12-15, 23-24; Doc. 68-6.
[52]   Cauley argues that his new claims would not "require additional discovery other than what was previously requested from the par[]ties" and that the "claims are apparently not new to the Defendant." Doc. 79 at 3. However, this ignores that the defamation claim was dismissed from

would moot the dispositive motion that Geisinger has filed, thereby voiding the money, time, and efforts expended in preparing that motion and essentially forcing Geisinger to litigate this case again from the very beginning, the Court concludes that permitting amendment at this stage would be highly prejudicial to Geisinger, which weighs heavily against granting Cauley's motion.

The Court is further weary of granting this motion and condoning Cauley's actions in this matter. It is beyond peradventure that a party must allege sufficient facts in support of his claim before he is afforded the opportunity to engage in discovery and uncover further evidence in support of his claim.[53] Cauley's second amended complaint failed to meet that requirement; this Court dismissed as legally insufficient Cauley's allegations regarding any purported defamation.[54] The Court nevertheless granted leave for Cauley to replead that claim—Cauley did not do so because, as his current motion to amend makes clear, he did not have sufficient evidence or knowledge to support allegations of defamation.[55]

Instead, for more than one year, he engaged in a fishing expedition in search of such evidence so that he could adequately plead his claim. However, the law is

---

the second amended complaint, and Geisinger therefore had no incentive to pursue discovery regarding that claim.

[53] *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim "has facial plausibility" and should proceed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

[54] Doc. 30 at 13-23.

[55] *See* Doc. 69 at 3 ("Cauley did not have an earlier opportunity to review or obtain the information that was uncovered in discovery"); *id.* at 7 ("Cauley discovered information that was previously unknown").

clear that plaintiffs are not "entitled to additional discovery so that they may present adequate pleadings."[56] Had the Court known when it dismissed in part the second amended complaint that Cauley was at that time unable to adequately plead his defamation claim, it would have followed the well-worn path of dismissing that claim with prejudice, rather than without.[57] Cauley's chosen path is improper, and his motion to amend will be denied.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Cauley has failed to demonstrate that justice requires that he be permitted to file an amended complaint, or that good cause to so do exists. Accordingly, Cauley's motion to file a third amended complaint will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[56]  *Franks v. Food Ingredients Int'l, Inc.*, No. CIV. A. 09-3649, 2010 WL 3046416, at *7 (E.D. Pa. July 30, 2010) (citing *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 699 (6th Cir. 2004)).

[57]  *See, e.g., Conley v. St. Jude Med., LLC*, 482 F. Supp. 3d 268, 281 (M.D. Pa. 2020) ("As the Court is disinclined to allow Plaintiffs to undertake a discovery fishing expedition, and in light of Plaintiffs' arguments that discovery is necessary to more specifically plead their claims, the Court finds that allowing further amendment in this case would be futile. Accordingly, the Court's dismissal of Plaintiffs' amended complaint is with prejudice").